**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHANTE C. LEE, AS PARENT AND NEXT FRIEND OF M.L., A MINOR<br>　　　Plaintiff,<br><br>　　v.<br><br>SEED PUBLIC CHARTER SCHOOL OF WASHINGTON, DC, ET AL.,<br>　　　Defendants. | Civil Action No. 18-2786 (CKK) |

**Memorandum Opinion**
(August 21, 2020)

Upon consideration of the briefing, the relevant authorities, and the record,[1] the Court **GRANTS** Defendant SEED Foundation's Motion to Dismiss Plaintiff's Second Amended Complaint ("Defendant's Motion"), ECF No. 37. Accordingly, and for the reasons provided herein, the Court hereby **DISMISSES WITHOUT PREJUDICE** Counts I, II, III, and IV of the Second Amended Complaint, as to Defendant SEED Foundation.

## I.　Background

This case involves alleged instances of bullying and violence suffered by a young boy, M.L., while he was a student at the SEED Public Charter School (the "SEED School") in Washington, D.C. Second Am. Compl. ¶ 10. Plaintiff Chante Lee is M.L.'s natural and legal parent, and she now brings this action on her son's behalf against both the SEED School and the SEED Foundation, a corporation which allegedly manages the SEED School. *Id.* ¶¶ 1–10.

---

[1] The Court's consideration has focused on the following:
- Second Am. Compl., ECF No. 26;
- Def.'s Mem. Of Points & Authorities In Supp. Of Its Mot. To Dismiss Pl.'s Second Am. Compl. ("Def.'s Mot."), ECF No. 37-3;
- Pl.'s Mem. Of Points & Authorities In Opp'n To Def.'s Mot. To Dismiss Second Am. Compl. (Pl.'s Opp'n"), ECF No 42-1; and
- Def.'s Reply Mem. ("Def.'s Reply"), ECF No. 43.

1

### A. Factual Background

The facts of this case are saddening.[2] M.L. is a child with autism. *Id.* ¶ 3. As Plaintiff explains, autism "is a pervasive developmental disability and is considered to be a neurological impairment characterized by significant deficits in verbal and non-verbal communication, a tendency to engage in repetitive and stereotypical movements, and unusual reactions to changes in routines or environments." *Id.* In addition to his autism, M.L. is also "socially delayed" because he "is younger than his peers by two years." *Id.* It is against this developmental backdrop, that Plaintiff presents the troubling acts of bullying directed at her son. *Id.* ¶¶ 11–24.

During the 2016 academic year, M.L. was a sixth-grade student at the SEED School. *Id.* ¶ 11. M.L. was ten-years old at the time, and, as a residential student, he lived on SEED campus housing during the school week. *Id.* ¶¶ 3, 11. According to Plaintiff, "M.L. was the victim of several instances of violence and bullying committed by other students at the Seed School" during the course of the 2016-17 school year. *Id.* ¶ 12. Specifically, "on or about September 26, 2016, two students at SEED assaulted minor M.L. on the SEED soccer field." *Id.* ¶ 13. "M.L. was stomped in the face, hit with rocks and suffered a concussion." *Id.* Later, on October 25, 2016, "SEED administration personnel acknowledged the constant bulling by some SEED students" and "promised to monitor the situation and take action to protect M.L. from violence and bullying." *Id.* ¶ 14.

The administration, however, was unable to make good on its promise. *Id.* In 2017, the bullying against M.L. only intensified, and Plaintiff alleges that school "administrators failed to document, investigate, [or] take immediate and appropriate action to investigate" the misconduct.

---

[2] For the purposes of the motion before the Court, the Court accepts as true the well-pled allegations in Plaintiff's Second Amended Complaint. The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in the United States*, 758 F.3d 296, 315 (D.C. Cir. 2014).

*Id.* ¶ 18. On September 19, 2017, for example, "M.L. was attacked in the boys' gym locker room by other male students." *Id.* ¶ 15. Plaintiff, as M.L.'s parent, was notified of the attack, but was not provided with an incident report, as was required by the school's academic policies handbook. *Id.* ¶¶ 15–17. Moreover, "M.L. was labeled gay" and some students "circulated video of M.L. naked in the shower, pronouncing him gay." *Id.* ¶ 19. "M.L. was mentally devasted by the incident." *Id.* And, as a result of the constant bullying, M.L. "was afraid to leave his dormitory room to go to the bathroom at night." *Id.* ¶ 20.

Finally, "on September 27, 2017, after students [again] verbally assaulted and insulted M.L., teased him, called him gay, while in his dorm room, M.L. attempted suicide." *Id.* ¶ 21. Understandably, Plaintiff withdrew M.L. from the SEED School thereafter. *Id.* ¶¶ 22–23. Plaintiff further states, however, that in early 2018 another SEED student died as a result of an on-campus suicide. *Id.* ¶ 25. Following this heartbreaking event, more parents of SEED students came forward with complaints, *id.* ¶ 26, and media reports ensued, addressing purported shortcomings in the SEED School's ability to monitor and care for the safety of its residential students, *id.* ¶¶ 27–34. In particular, Plaintiff laments the failure of the SEED School to provide adequate supervision of residential areas, such as the student dormitory. *Id.* ¶¶ 37–40.

**B. Procedural Background**

On August 22, 2018, Plaintiff filed a complaint, on behalf of M.L., in the Superior Court of the District of Columbia, raising negligence claims against the SEED School. *See* Not. of Removal, ECF No. 1, ¶ 1. On November 20, 2020, Plaintiff amended her complaint to include statutory claims under § 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) and the Individuals with Disabilities Education Act (20 U.S.C. § 1411, *et. seq*.). *Id.* ¶ 3–4. Invoking federal-question jurisdiction under 28 U.S.C. § 1331, the SEED School subsequently removed

Plaintiff's Amended Complaint to this Court on November 29, 2018. *See generally id.* The SEED School then moved to dismiss Plaintiff's Amended Complaint on multiple grounds. *See* Def.'s Mot. Dismiss, ECF No. 5. This Court granted the SEED School's motion, in part, holding that Plaintiff had not properly exhausted her IDEA claim and that Plaintiff's Rehabilitation Act claim was time-barred, "insofar as it relies on events occurring before August 22, 2017." *Lee as Next Friends of M.L. v. Seed Pub. Charter Sch. of Washington, D.C.*, No. CV 18-2786 (CKK), 2019 WL 4469285, at *1 (D.D.C. Sept. 18, 2019).

Following this partial dismissal, Plaintiff filed a Second Amended Complaint on January 6, 2020. *See generally* Second Am. Compl., ECF No. 26. This pleading again raised a Rehabilitation Act claim and claims of common law negligence against the SEED School. *See id.* ¶¶ 95–153. Of note, however, the Second Amended Complaint also raised such claims against a new party, Defendant SEED Foundation. *See id.* As alleged by Plaintiff, the SEED Foundation is a private corporation that acts as an "independent contractor" for the SEED School and, allegedly, "manages" the SEED School as well. *Id.* ¶¶ 9, 139–40. Plaintiff now asserts that the SEED Foundation, along with the SEED School, is liable for the injuries caused to M.L. *Id.* ¶¶ 95–153. The Second Amended Complaint raises five individual counts specifically against the SEED Foundation: (1) Violation of § 504 of the Rehabilitation Act of 1973, (2) Gross Negligence, (3) Negligent Infliction of Emotional Distress, (4) Negligence, and (5) Punitive Damages. *Id.* ¶¶ 95–157. On February 13, 2020, the parties entered a joint stipulation dismissing Plaintiff's claim for punitive damages against the SEED Foundation, as well as Plaintiff's Rehabilitation Act claim against the SEED Foundation "insofar as it relies on events occurring before August 22, 2017." Order, ECF No. 36; *see also* FED. R. CIV. P. 41(a)(1).

Now before the Court is Defendant SEED Foundation's partial motion to dismiss the Second Amended Complaint. Therein, the SEED Foundation raises challenges, both jurisdictional and on the merits, to the remaining Rehabilitation Act and negligence claims asserted against it in the Second Amended Complaint. *See* FED. R. CIV. P. 12(b)(1), (6). Defendant's Motion has been fully briefed and is now ripe for review.

## II.   Legal Standard

Defendant requests dismissal of Plaintiff's claims both for lack of subject-matter jurisdiction and for failure to state a claim for which relief may be granted. These two grounds for dismissal are analyzed pursuant to different rules.

Motions to dismiss for lack of subject-matter jurisdiction are analyzed pursuant to Federal Rule of Civil Procedure 12(b)(1). A court must dismiss a case pursuant to Rule 12(b)(1) when it lacks subject-matter jurisdiction. In determining whether there is jurisdiction, "the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. For Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)) (internal quotation marks omitted). "At the motion to dismiss stage, counseled complaints, as well as pro se complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, it is still true that the "[p]laintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Am. Farm Bureau v. EPA*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to

dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted).

Motions to dismiss for failure to state a claim for which relief may be granted are analyzed pursuant to Federal Rule of Civil Procedure 12(b)(6). According to Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### III. Discussion

Defendant's Motion presents three principal arguments for the Court to address: (1) Plaintiff lacks constitutional standing to assert any claim against the SEED Foundation, (2) Plaintiff has insufficiently pleaded her Rehabilitation Act claim against the SEED Foundation, and (3) Plaintiff has insufficiently pleaded her negligence claims against the SEED Foundation. The Court will address each argument in turn.

#### A. Article III Standing

Defendant first argues that Plaintiff lacks the requisite constitutional standing to assert a claim against it in this case. *See* Def.'s Mot. at 5–6. Because standing is a "threshold jurisdictional

requirement," this Court must address it first before evaluating this case on the merits. *Bauer v. Marmara*, 774 F.3d 1026, 1031 (D.C. Cir. 2014).

Article III of the Constitution limits this Court's jurisdiction to "actual cases and controversies." *Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014). A plaintiff "bears the burden of showing that he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). "To establish constitutional standing, plaintiffs 'must have suffered or be imminently threatened with a concrete and particularized injury in fact that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision.'" *Mendoza*, 754 F.3d at 1010 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1386 (2014); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). At the pleading stage, a plaintiff is "required only to state a plausible claim that each of the standing elements is present." *Attias v. Carefirst*, Inc., 865 F.3d 620, 625 (D.C. Cir. 2017).

Here, Defendant does not challenge Plaintiff's assertion of injury-in-fact or the potential for redress through the compensatory damages Plaintiff seeks to recover. *See* Def.'s Mot. at 5–7. Nor does the Court doubt that the alleged violence and bullying suffered by M.L. constitutes a concrete injury. *See, e.g.*, Second Am. Compl. ¶ 15; *see also Seed Pub. Charter Sch.*, 2019 WL 4469285, at *8. Instead, Defendant challenges only the second prong of Article III standing: traceability. *See* Def.'s Mot. at 6 ("Plaintiff has failed to allege any injury sustained by M.L. that is fairly traceable to SEED Foundation."). Specifically, Defendant argues that neither Plaintiff's negligence claims nor her claim under the Rehabilitation Act are causally connected to any of Defendant's alleged conduct. *See id.* The Court disagrees.

To establish the second prong of Article III standing, Plaintiff must plausibly allege a "'causal connection between the injury and the conduct complained of [that is] 'fairly traceable to

the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (quoting *Lujan*, 504 U.S. at 561). Article III standing, however, "does not require that the defendant be the most immediate cause, or even a proximate cause, of the plaintiffs' injuries." *Attias*, 865 F.3d at 629. Instead, an injury may be "fairly traceable" to a defendant, where the defendant's conduct was a "substantial factor" leading to the injury itself. *Tozzi v. U.S. Dep't of Health & Human Servs.*, 271 F.3d 301, 308 (D.C. Cir. 2001).

In this case, Plaintiff has provided sufficient factual allegations to plausibly establish a causal connection between M.L.'s injury and Defendant's conduct. Here, Plaintiff explains that M.L. was injured through the course of bullying and acts of violence occurring at the SEED School. *See* Second Am. Compl. ¶¶ 11–34. And to connect this injury to the SEED Foundation, Plaintiff alleges that "Defendant SEED Foundation is a corporation that manages the SEED School." *Id.* ¶ 9. Specifically, Plaintiff asserts that the SEED Foundation is responsible for ensuring that employees of the SEED School "are properly trained and supervised to perform their jobs." *Id.* ¶ 72. Moreover, Plaintiff alleges that the SEED Foundation participates in setting SEED school policy. *Id.* ¶ 144. Plaintiff further alleges that this supervisory role specifically includes oversight of the school's rules and regulations, including the school's anti-bullying policy. *Id.* ¶ 71–73. Even if these allegations do not demonstrate that the SEED Foundation was "the immediate cause, or even a proximate cause, of the [M.L.'s] injuries," they are sufficient to show, at the pleading stage, that M.L.'s injuries were fairly traceable to Defendant. *Attias*, 865 F.3d at 629. Accordingly, the Court concludes that Plaintiff has established sufficient Article III standing to raise claims against the SEED Foundation and **DENIES** Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).

## B. The Rehabilitation Act

In Count I of the Second Amended Complaint, Plaintiff raises a statutory claim under § 504 of the Rehabilitation Act of 1973. *See* Second Am. Compl. ¶¶ 95–106. Section 504 provides that:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). Litigants possess "express rights of action . . . under section 504 of the Rehabilitation Act." *Women's Equity Action League v. Cavazos*, 906 F.2d 742, 750 (D.C. Cir. 1990). "To prove a violation of section 504, the plaintiff[ ] must show that (1) they are disabled within the meaning of the Rehabilitation Act, (2) they are otherwise qualified, (3) they were excluded from, denied the benefit of, or subject to discrimination under a program or activity, and (4) the program or activity is carried out by a federal executive agency or with federal funds." *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1266 (D.C. Cir. 2008).

Here, Defendant SEED Foundation argues that Plaintiff cannot pursue a § 504 claim because Plaintiff has not established that Defendant is a recipient of federal funds. *See* Def.'s Mot. at 7. Defendant couches this argument within a jurisdictional framework. *See id.* Nonetheless, Defendant's challenge to Plaintiff's § 504 claim is on the merits, and, therefore, the Court will address it in kind. *See Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 519–20 (D.C. Cir. 2018) (Edwards, J., concurring) ("Statutory standing . . . concern[s] a party's cause of action, not the court's jurisdiction."); *Lee v. Corr. Corp. of Am./Corr. Treatment Facility*, 61 F. Supp. 3d 139, 144 (D.D.C. 2014) (dismissing § 504 claim under Rule 12(b)(6)).

When considering the merits of Plaintiff's Rehabilitation Act cause of action, the Court finds that the Second Amended Complaint does not state a plausible § 504 claim against Defendant SEED Foundation. The Supreme Court has made clear that § 504, by its terms "limits its coverage to the 'program or activity' that 'receiv[es]' federal financial assistance." *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 604 (1986). Following this statutory construction, courts in this circuit have limited "the scope of section 504 of the Rehabilitation Act . . . to those who actually receive federal financial assistance." *Abdus-Sabur v. Hope Vill., Inc.*, 221 F. Supp. 3d 3, 9 (D.D.C. 2016) (citation omitted); *see also West v. Spellings*, 480 F. Supp. 2d 213, 217 (D.D.C. 2007). In *Lee*, for example, this Court dismissed a § 504 claim raised against a Maryland corporation operating a private prison because, although the corporation contracted with the Bureau of Prisons and the U.S. Marshals, the plaintiff did not "allege that [the corporation] receive[d] subsidies from the federal government" sufficient to qualify as "federal financial assistance" within the meaning of the statute. 61 F. Supp. 3d at 144.

Plaintiff's Second Amended Complaint suffers from a similar deficiency. As Defendant notes, Plaintiff alleges only that "defendants [sic] Seed was receiving federal funding, as contemplated by § 504 of the Rehabilitation Act of 1973." Second Am. Compl. ¶ 67; *see also* Def.'s Mot. at 7. This allegation relates specifically to the SEED School, a public institution formed pursuant to D.C. Code §38-1802.01, *et. seq.*, but not to the SEED Foundation, a private corporation. *See* Second Am. Compl. ¶¶ 7–9. Indeed, while Plaintiff specifically alleges that co-Defendant SEED School "is subject to § 504 of the Rehabilitation Act of 1973," *id.* ¶ 8, Plaintiff omits any parallel allegation that Defendant SEED Foundation is similarly subject to that statute, *see id.* ¶ 9. Instead, the Second Amended Complaint and Plaintiff's opposition brief emphasize the managerial control Defendant Seed Foundation exercises over the school. *See, e.g.*, *id.* ¶¶ 9,

10

72–73; Pl.'s Opp'n at 4–7. But nowhere does Plaintiff plausibly allege that Defendant SEED Foundation itself received "federal financial assistance." Without this predicate allegation, Plaintiff has failed to state a claim under § 504 against Defendant Seed Foundation, and this Court shall **DISMISS** Count I of the Second Amended Complaint accordingly. *See Women's Equity Action League*, 906 F.2d at 750 ("Plaintiffs have . . . express rights of action against *federally-funded* discriminators under section 504 of the Rehabilitation Act.") (emphasis added); *Lee*, 61 F. Supp. 3d at 144.

### C. Negligence

In addition to the Rehabilitation Act claim, Plaintiff also asserts three common law causes of action against Defendant SEED Foundation for gross negligence (Count II), negligent infliction of emotional distress (Count III), and negligence (Count IV). *See* Second Am. Compl. ¶¶ 107–153. In both the Second Amended Complaint and her opposition brief, Plaintiff expressly frames these causes of action as *direct* negligence claims against Defendant SEED Foundation. *See id.*; Pl.'s Opp'n at 7–8. The Court, therefore, will only address them as such.[3]

To state a claim for negligence, Plaintiff must adequately allege "a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach." *Washington Metro. Area Transit Auth. v. Ferguson*, 977 A.2d 375, 377 (D.C. 2009) (citing *Mixon v. Washington Metro. Area Transit Auth.*, 959 A.2d 55, 58 (D.C. 2008)). To establish "gross negligence," a claimant must further demonstrate that there was "such an extreme deviation from the ordinary standard of care as to support a finding of wanton, willful and reckless disregard or conscious indifference for the rights

---

[3] The parties and conduct at issue in Plaintiff's negligence claims are connected to the District of Columbia. *See* Second Am. Compl. ¶¶ 3–9, 107–153. Accordingly, the Court will apply the law of the District of Columbia to Plaintiff's common law negligence claims. *See Wilkins v. District of Columbia*, 879 F. Supp. 2d 35, 39 (D.D.C. 2012).

11

and safety of others." *Wells v. Hense*, 235 F. Supp. 3d 1, 13 (D.D.C. 2017) (citing *District of Columbia v. Walker*, 689 A.2d 40, 44 (D.C. 1997)). Finally, to state a claim for negligent infliction of emotional distress, a claimant must allege that "he or she was (1) in the 'zone of danger'; which was (2) created by the defendant's negligence; (3) making the plaintiff fear for his or her own safety; resulting in (4) emotional distress that was serious and verifiable." *Jograj v. Enter. Servs., LLC*, 270 F. Supp. 3d 10, 26–27 (D.D.C. 2017). Because each of these variant claims requires a duty of care, none of Plaintiff's negligence actions against Defendant can proceed without establishing some duty owed by the SEED Foundation in this case. *See Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 793 (D.C. 2011); *Bd. of Trustees of Univ. of D.C. v. DiSalvo*, 974 A.2d 868, 870 (D.C. 2009); Def.'s Mot. at 7.

"In determining the existence of a duty owed to a plaintiff, courts have applied a foreseeability of harm test, which is based on the recognition that duty must be limited to avoid liability for unreasonably remote consequences." *Hedgepeth*, 22 A.3d at 794 (quotation omitted). "Inherent . . . in the concept of duty is the relationship between the parties out of which the duty arises." *Id.* Whether a duty exists, however, is also "the result of a variety of considerations and not solely the relationship between the parties." *DiSalvo*, 974 A.2d at 871. "Ultimately, the determination of whether a duty should be imposed is made by weighing the various policy considerations and reaching a conclusion that the plaintiff's interests are, or are not, entitled to legal protection against the conduct of the defendant." *Hedgepeth*, 22 A.3d at 794 (quotation omitted).

The Court is not persuaded, in this case, that Plaintiff has established a duty of care owed by Defendant SEED Foundation, an independent contractor, to M.L., a student. As an initial matter, because the SEED Foundation is not a school itself, *see id.* ¶¶ 9, 139, Plaintiff cannot rely

upon the traditional common law duty of care owed by schools to their students. *See Thomas v. City Lights Sch., Inc.*, 124 F. Supp. 2d 707, 709 (D.D.C. 2000). Instead, Plaintiff contends that the SEED Foundation owes a duty to M.L. because of the contractual arrangement between the SEED Foundation and the SEED School. *See* Pl.'s Opp'n at 8 ("The duty of care in this context is based on Exhibit A, the SEED document that establish[es] the contractual and managerial relationship between the SEED Foundation and SEED PCS."). Accordingly, the Court must "look to the contract to determine the scope of the undertaking as it relates to the protection of [M.L.]", and whether the services provided by the SEED Foundation were "necessary for [his] protection." *Presley v. Commercial Moving & Rigging, Inc.*, 25 A.3d 873, 888 (D.C. 2011).

Here, the agreement at issue gives the SEED Foundation certain advisory responsibilities, such as the ability to offer periodic training sessions to SEED School staff, assist in the development of school programming, and to approve of the Head of School appointment. *See* Pl.'s Opp'n, Ex. A (May 19, 2009 Agreement), ¶¶ 3, 9. The scope of these services, however, does not establish a clear connection between the SEED Foundation and individual students themselves. Indeed, the agreement stipulates that the SEED School retains direct authority to hire staff and also to "maintain and operate the campus." *Id.* ¶¶ 1, 9; *see also* Second Am. Compl. ¶ 144. In light of this allocation of responsibility, it is not reasonably foreseeable that the periodic oversight offered by Defendant SEED Foundation as an independent contractor would be necessary to prevent harm to students like M.L. caused by intra-school bullying. *See id.* ¶¶ 11–22. Plaintiff offers no authority to the contrary, *see* Pl.'s Opp'n at 7–9, and relevant case law in this jurisdiction militates against imposing a duty of care on third-parties like the SEED Foundation. *See Bradley v. Nat'l Collegiate Athletic Ass'n*, 249 F. Supp. 3d 149, 176 (D.D.C. 2017) (dismissing negligence claim against athletic conference where its policies and procedures created relationships with universities

but could not support a duty owed to individual student athletes); *Presley*, 25 A.3d at 888 ("We are not persuaded that . . . CRSS should have foreseen that its obligation under the CQM contract to 'anticipate problems' and to 'monitor' safety compliance was 'necessary for the protection' of Presley.") (citing *Haynesworth v. D.H. Stevens Co.*, 645 A.2d 1095, 1097 (D.C. 1994)).

Furthermore, there are additional bases supporting the Court's conclusion that Defendant SEED Foundation does not owe M.L. a direct duty of care. When discerning whether such a duty exists, courts not only consider the relationship between the parties and the foreseeability of harm at issue, but also whether "considerations of fairness counsel against imposing a duty." *Presley*, 25 A.3d at 890. Importantly, these "considerations of fairness" take into account "decisions made by the courts and *the legislatures*." *Parker v. John Moriarty & Assocs.*, 224 F. Supp. 3d 1, 8 (D.D.C. 2016) (emphasis added). And here, the legislature has provided pertinent guidance. Specifically, D.C. Code Ann. § 38-1802.04(c)(17)(A) dictates that "public charter school[s], and [their] incorporators, Board of Trustees, officers, employees, and volunteers, shall be immune from civil liability, both personally and professionally, for any act or omission within the scope of their official duties." The entities enumerated in § 38-1802.04(c)(17)(A) become liable only where they commit an act of gross negligence, an intentional tort, or a crime. *Id.*; *see also Seed Pub. Charter Sch.*, 2019 WL 4469285, at *8.

The exclusion of *independent contractors* like the SEED Foundation from this list is noteworthy. Plaintiff argues that the omission of independent contractors from § 38-1802.04(c)(17)(A), indicates that entities like the SEED Foundation are logically subject to liability for acts of ordinary negligence. *See* Second Am. Compl. ¶¶ 134, 139. But Plaintiff's statutory interpretation relies upon an inverted application of the *expressio unius* canon, which puts the cart before the horse. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013) ("The

14

force of any negative implication . . . depends on context."). Indeed, Plaintiff's reading of § 38-1802.04(c)(17)(A) would insulate charter schools and teachers from their own negligent conduct, while leaving independent contractors liable for those same acts, notwithstanding their more attenuated connection with students. Plaintiff offers no explanation for this inconsistency, which cannot be reasonably reconciled with the "considerations of fairness" courts must address when evaluating duties of care. *Presley*, 25 A.3d at 890. Ultimately, a more persuasive inference is that § 38-1802.04(c)(17)(A) does not confer immunity upon independent contractors like the SEED Foundation because the legislature understood that such entities do not owe charter school students a common law duty of care. Moreover, this conclusion aligns with a general "public policy consideration," *Bradley*, 249 F. Supp. 3d at 177, in favor of incentivizing the work of non-profit enterprises with the purpose of providing "support [to] boarding schools serving under-resourced populations." Pl.'s Opp'n at 2.

For these reasons, The Court concludes that Defendant SEED Foundation does not owe M.L. a duty of care. Consequently, Plaintiff has not stated a claim of *direct* negligence against Defendant SEED Foundation, and the Court shall **DISMISS** Counts II, III, and IV of the Second Amended Complaint, as to Defendant SEED Foundation, accordingly.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant SEED Foundation's Motion to Dismiss Plaintiff's Second Amended Complaint, ECF No. 37.  Accordingly, and for the reasons provided above, the Court hereby **DISMISSES WITHOUT PREJUDICE** Counts I, II, III, and IV of the Second Amended Complaint, as to Defendant SEED Foundation.  An appropriate Order accompanies this Memorandum Opinion.

Date:  August 21, 2020

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge